IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-324-D
No. 5:25-CV-266-D

| | | |
|---|---|---|
| KARIM AZIZ RAZZAK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On May 19, 2025, Karim Aziz Razzak ("Razzak" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 27-month sentence [D.E. 41]. On August 5, 2026, the United States moved to dismiss Razzak's section 2255 petition for failure to state a claim on which relief can be granted [D.E. 50] and filed a supporting memorandum [D.E. 51]. Razzak did not respond. On September 28, 2026, Razzak moved for leave to file a reply to the United States' motion to dismiss [D.E. 52]. As explained below, the court grants Razzak's motion for leave to file a reply, grants the United States' motion to dismiss, and dismisses Razzak's section 2255 motion.

I.

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide emergency financial assistance to Americans suffering economically because of the COVID-19 pandemic. See 15 U.S.C. §§ 9001–9141. The Small Business Administration ("SBA"), a United States executive agency, led the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL") to assist small businesses. See

[D.E. 1] 2. Under these programs, small business owners would apply for loans that could amount to about 2.5 times the average monthly payroll expenses. See Presentence Investigation Report ("PSR") [D.E. 29] ¶ 10.

In August 2020, Edward Whitaker ("Whitaker") and Schunda Coleman ("Coleman") assisted Razzak in securing PPP loans for Razzak's business, Karma Contracting, Inc. See id. at ¶ 12. Whitaker and Coleman prepared loan applications falsely representing Razzak's number of employees and monthly and payroll expenses. See id. Razzak signed the fraudulent application and multiple other fraudulent forms, including tax forms. See id. The applications were designed to obtain a loan just under the $150,000 threshold so the SBA would forgive the loan with minimal paperwork. See id. Whitaker instructed Razzak to write checks to fraudulent employees. See id. Individuals cashed these checks and then transferred the money back to Razzak minus a kickback. See id. During the same time, Razzak applied for EIDL loans but was denied. See id. at ¶ 13.

Between August 2020 and April 2022, Whitaker and Coleman conspired with others to fraudulently disburse over $15 million in CARES Act loans. See id. at ¶ 11. Razzak personally obtained $291,644.50 in fraudulent PPP loans. See id. at ¶ 12.

On April 12, 2022, during an unprotected statement, Razzak told authorities how he and Whitaker obtained the loans and that Whitaker informed Razzak everything was legal. See id. at ¶ 13. Razzak, however, knew that he had to make repeated false statements to obtain the money. Razzak also stated that he used the PPP loan funds to pay expenses, debt, and Karma Contracting employees. See id.

On April 20, 2022, Razzak provided grand jury testimony. See id. at ¶ 14. During this testimony, Razzak stated that Whitaker provided the false information on the PPP loan application and that someone else signed Razzak's name on a portion of the fraudulent documents on his

behalf. See id. Razzak also admitted to discussing the inflated employee salaries with Whitaker and that Whitaker assured him everything was legal. See id.

On October 10, 2023, Razzak was charged in a criminal information with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 [D.E. 1, 2]. On January 24, 2024, Razzak waived his right to an indictment and pleaded guilty to the charge [D.E. 12, 14, 18]. See PSR ¶ 3. On May 23, 2024, the court sentenced Razzak to 27 months' imprisonment and to pay restitution to the SBA [D.E. 35]. On November 14, 2025, Razzak was released from federal prison. See [D.E. 52] 2.

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess,

730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Razzak must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted). "An ineffective assistance claim can function as a way to

escape rules of waiver and forfeiture and raise issues not presented at trial [or earlier hearings], and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (quotation omitted). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second guess counsel's assistance after conviction or an adverse sentence. The question is whether an attorney's representation amounted to incompetence under the prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (quotation and citations omitted).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 468 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional prejudice requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions more likely than not altered the outcome; but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest cases.'" Harrington, 562 U.S. at 111–12 (quoting Strickland,

466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expresses preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

Razzak argues that his defense counsel provided ineffective assistance of counsel by (1) not moving to dismiss the criminal information, (2) failing to thoroughly review the criminal information, conduct legal research, or file a pre-indictment motion to dismiss the criminal information, and (3) failing to object to the court's amendment of the criminal information charge at his Rule 11 colloquy. See [D.E. 41] 5–20.

A.

Razzak argues that defense counsel performed deficiently by failing to advise Razzak that he "could only be charged by a [g]rand [j]ury indictment" and by failing to move to dismiss the criminal information. Id. at 6. Razzak relies on Federal Rule of Criminal Procedure 7(a) to argue that he "had a right to be charged ONLY by" an indictment. Id.

The court rejects Razzak's argument. Although Rule 7(a)(1) states that a felony offense "must be prosecuted by an indictment," Rule 7(b) allows a defendant accused of an offense punishable by more than one year imprisonment to "be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(a)–(b).

At Razzak's Rule 11 hearing, the court informed Razzak that because he was charged with a felony, he had the right to be charged in an indictment by a grand jury. See Rule 11 Tr. [D.E. 40] 3. The court then informed Razzak he could waive his right to an indictment and agree to be prosecuted by a criminal information. See id. The court also informed Razzak of his right to choose not to plead guilty. See id. at 3–4. The court then reviewed the consequences of pleading guilty and informed Razzak that a guilty plea accepted that day could not later be withdrawn. See id. at 4–5. Razzak confirmed he understood these consequences. See id. at 16.

The court then reviewed the charge in the criminal information with Razzak. See id. at 17. The court confirmed Razzak understood the charge against him. See id. The court then asked if Razzak understood he had the "right to be indicted by the grand jury rather than plead guilty to the [c]riminal [i]nformation." See id. Razzak told the court he understood. See id. The court then confirmed that Razzak signed the waiver of indictment form. See id. at 17–18. The court then confirmed Razzak understood the consequences of signing the waiver and that Razzak had not been pressured to waive his right to an indictment. See id. at 18.

Razzak's sworn statements at his Rule 11 hearing bind him. See, e.g., Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Yelizarov, 140 F.4th 597, 605 (4th Cir. 2025) ("Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy."), cert. denied, 146 S. Ct. 345 (2025); United States v. Moussaoui, 591 F.3d 263, 295–99 (4th Cir. 2010); Lemaster, 403 F.3d at 221–23. Razzak's statements show he was aware of his right to be indicted by a grand jury and knowingly waived that right. See, e.g., United States v. Ruiz, 536 U.S. 622, 629 (2002); Moussaoui, 591 F.3d at 287–88; Fed. R. Crim. P. 7(b).

The Sixth Amendment did not require defense counsel to file a meritless motion. See, e.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Because a motion to dismiss the criminal information for improperly charging Razzak would have been meritless, Razzak has not plausibly alleged that defense counsel's decision not to file such a motion was deficient or prejudicial. See id. at 123–28. Thus, Razzak's first claim fails.

B.

Razzak argues that his defense counsel performed deficiently by failing to adequately review the criminal information and conduct legal research which would have allegedly revealed

the deficiency. See [D.E. 41] 13–14. Razzak alleges the criminal information was deficient because it contained an open-ended date range and it did not charge that he voluntarily participated in the conspiracy. See id. at 12–13. Razzak also alleges his defense counsel performed deficiently in advising Razzak to plead guilty. See id. at 13.

Razzak did not appeal his conviction and sentence or challenge the criminal information at his Rule 11 hearing. As such, Razzak procedurally defaulted this argument by failing to raise it on direct appeal. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, 608 U.S. 411, 419 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." Id. (cleaned up); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 622 (1998); Fugit, 703 F.3d at 253; United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Razzak has not plausibly alleged cause and prejudice or actual innocence, and his claim fails.

Alternatively, the criminal information was not deficient. The criminal information's estimated date range for Razzak's wire fraud conspiracy was "in or about August 2020 to in or about April 2022." [D.E. 1] 3. This estimation is not "open-ended in both directions." [D.E. 41] 13. Rather, it sets a finite temporal time range for the conduct being prosecuted.

As for Razzak's second allegation, the criminal information does not use the words "voluntary participation," but it charged that Razzak did "knowingly combine, conspire, confederate, and agree" to commit wire fraud. [D.E. 1] 6. A criminal indictment must "contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense in future prosecution for the same offense." United States v. Loayza, 107 F.3d 257, 260 (4th Cir. 1997).

In 18 U.S.C. § 1349, Congress criminalized attempt and conspiracy to commit wire fraud. See 18 U.S.C. § 1349. The criminal information told Razzak that he was being charged with a conspiracy, contains the elements of the conspiracy for which he was being charged, and prevents future prosecution for the same offense. See [D.E. 1] 6; Moussaoui, 591 F.3d at 296–97; United States v. Fogel, 901 F.2d 23, 25 (4th Cir. 1990). The words "agree" and "knowingly" and "conspire" as used in the criminal information adequately told Razzak of the voluntarily participation element of a conspiracy charge. [D.E. 1] 6; see Fogel, 901 F.2d at 25.

Because a motion to dismiss the criminal information as deficient would have been meritless, Razzak has failed to plausibly allege deficient performance or prejudice by defense counsel's failure to file a pre-indictment motion to dismiss the criminal information. See, e.g., Knowles, 556 U.S. at 123. Thus, Razzak's second claim fails.

C.

Razzak argues that defense counsel performed deficiently by failing to object to the court's alleged amendment of the criminal information at his Rule 11 hearing, which rendered his plea unknowing and involuntary. See [D.E. 41] 16. Specifically, Razzak argues that court misread the elements of the criminal charge at Razzak's Rule 11 hearing, thereby amending the charge. See id. at 18–19.

Razzak does not specifically allege how the elements in the criminal information differed from the elements the court reviewed with him at his Rule 11 colloquy. Thus, his claim is speculative and Razzak fails to plausibly allege his claim. See Iqbal, 556 U.S. at 677–79; Giarratano, 521 F.3d at 302.

Alternatively, Razzak's claim fails. At the Rule 11 hearing, the court tracked the crime charged in the criminal information. The criminal information charged that Razzak did

"knowingly combine, conspire, confederate, and agree" to commit wire fraud. [D.E. 1] 6. At Razzak's Rule 11 hearing, the court reviewed the nature of the offense as "conspiracy to commit wire fraud," and explained that to convict Razzak of the charge the United States would have to prove that Razzak "knowingly and voluntarily" conspired with others to commit wire fraud. Rule 11 Tr. 23. The charge lists the essential elements of conspiracy to commit wire fraud consistent with governing statutes. See 18 U.S.C. §§ 1343, 1349. Razzak did not suffer prejudice from his defense counsel's failure to make a baseless objection, and the court's review of the charge did not make Razzak's guilty plea unknowing or involuntary. Thus, Razzak's third claim fails.

After reviewing the claims presented in Razzak's motion, the court finds that reasonable jurists would not find the treatment of Razzak's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

On September 28, 2026, Razzak moved for leave to file an untimely reply to the United States' motion to dismiss Razzak's 2255 motion. See [D.E. 52]. Razzak argues that he never received a copy of the United States' motion to dismiss because he did not notify the court of his address change and it is unclear when the response deadline passed. See id. at 2. Razzak attached a proposed response brief to his motion. See [D.E. 52-1]. The court grants Razzak's motion and has reviewed Razzak's attached brief.

IV.

In sum, the court GRANTS petitioner's motion for leave to file a reply [D.E. 52], GRANTS respondent's motion to dismiss [D.E. 50], DISMISSES petitioner's section 2255 petition [D.E. 41], and DENIES a certificate of appealability.

SO ORDERED. This 28 day of October, 2026.

J. Dever
JAMES C. DEVER III
United States District Judge